

**FILED**

NOV 2 1 2024

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

***United States Department of Justice***

*United States Attorney*
*Southern District of West Virginia*

---

*Robert C. Byrd United States Courthouse*          *1-800-659-8726*
*300 Virginia Street, East*                              *304-345-2200*
*Suite 4000*                                        *FAX: 304-347-5104*
*Charleston, WV 25301*

October 30, 2024

Gerald M. Titus, Esq.
Spilman, Thomas, & Battle PLLC
300 Kanawha Boulevard, East
Charleston, W. Va. 25301
gtitus@spilmanlaw.com

      Re:  United States v. Deanna L. Drumm
          Criminal No. 2:24-CR-179   (USDC SDWV)

Dear Mr. Titus:

    This will confirm our conversations with regard to your client, Deanna L. Drumm (hereinafter "Ms. Drumm"). As a result of these conversations, it is agreed by and between the United States and Ms. Drumm as follows:

    1.  **CHARGING AGREEMENT.** Ms. Drumm agrees to waive her right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

    2.  **RESOLUTION OF CHARGES.** Ms. Drumm will plead guilty to a violation of 15 U.S.C. §§ 77e(c) and 77x and 18 U.S.C. § 2 (aiding and abetting the offer of unregistered securities) as charged in said information.

    3.  **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Ms. Drumm will be exposed by virtue of this guilty plea is as follows:

    (a)  Imprisonment for a period of five years;

_____
Defendant's
Initials

Gerald M. Titus, Esq.
October 30, 2024                        Re: Deanna L. Drumm
Page 2

    (b)   A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

    (c)   A term of supervised release of three years;

    (d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

    (e)   An order of restitution pursuant to 18 U.S.C. §§ 3663(a)(3), 3663A(c)(1)(B), and 3664, or as otherwise set forth in this plea agreement.

    4.   **SPECIAL ASSESSMENT.**  Prior to the entry of a plea pursuant to this plea agreement, Ms. Drumm will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Ms. Drumm will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Ms. Drumm fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Ms. Drumm.

    5.   **RESTITUTION.** Notwithstanding the offense of conviction, Ms. Drumm agrees that she owes restitution in the amount of up to $434,501.42 to any and all victims and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Ms. Drumm further agrees as follows:

    (a)   Ms. Drumm agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and

Defendant's<br>
Initials

Gerald M. Titus, Esq.
October 30, 2024                        Re: Deanna L. Drumm
Page 3

       testimony concerning assets upon request of the United
States.

(b)    Ms. Drumm will fully complete and execute, under oath,
a Financial Statement and a Release of Financial
Information on forms supplied by the United States and
will return these completed forms to counsel for the
United States within seven calendar days from the date
of the signing of this plea agreement.

(c)    Ms. Drumm agrees not to dispose of, transfer or otherwise
encumber any real or personal property which she
currently owns or in which she holds an interest,
including: 4607 Normar Road, South Charleston, West
Virginia 25309.

(d)    Ms. Drumm agrees to fully cooperate with the United
States in the liquidation of assets to be applied towards
restitution, to execute any and all documents necessary
to transfer title of any assets available to satisfy
restitution, to release any and all right, title and
interest she may have in and to such property, and waives
her right to exemptions under the Federal Debt
Collection Procedures Act upon levy against and the sale
of any such property.

(e)    Ms. Drumm agrees not to appeal any order of the District
Court imposing restitution unless the amount of
restitution imposed exceeds the amount set forth in this
plea agreement. However, nothing in this provision is
intended to preclude the Court from ordering Ms. Drumm
to pay a greater or lesser sum of restitution in
accordance with law.

      6.   **PAYMENT OF MONETARY PENALTIES**. Ms. Drumm authorizes the
Financial Litigation Program in the United States Attorney's
Office to obtain a credit report from any major credit reporting
agency prior to sentencing in order to assess her financial
condition for sentencing purposes. Ms. Drumm agrees not to object

_____
Defendant's
Initials

Gerald M. Titus, Esq.
October 30, 2024                    Re: Deanna L. Drumm
Page 4

to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States.  So long as the monetary penalties are ordered to be due and payable in full immediately, Ms. Drumm further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

Ms. Drumm authorizes the United States, through the Financial Litigation Program, to submit any unpaid criminal monetary penalty to the United States Treasury for offset in accordance with the Treasury Offset Program, regardless of the defendant's payment status or history at that time.

In addition to any payment ordered by the Court, Ms. Drumm shall pay all monies received from any source other than earned income, including but not limited to, lottery winnings, gambling proceeds, judgments, inheritances, and tax refunds, toward the court ordered restitution or fine.

Ms. Drumm agrees that if she retains counsel or has appointed counsel in response to the United States' efforts to collect any monetary penalty, she shall immediately notify the United States Attorney's Office, Attention: Financial Litigation Program, 300 Virginia Street E., Suite 4000, Charleston, West Virginia 25301, in writing and shall instruct her attorney to notify FLP immediately of her representation.

7.    **COOPERATION.**  Ms. Drumm will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States.  In complying with this provision, Ms. Drumm may have counsel present except when appearing before a grand jury.  Further, Ms. Drumm agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate,

                                            _____
                                            Defendant's
                                            Initials

Gerald M. Titus, Esq.
October 30, 2024                    Re: Deanna L. Drumm
Page 5

in subsequent indictments or informations.

    8.   **USE IMMUNITY.**  Unless this agreement becomes void due
to a violation of any of its terms by Ms. Drumm, and except as
expressly provided for in paragraph ten below, nothing contained
in any statement or testimony provided by her pursuant to this
agreement, or any evidence developed therefrom, will be used
against her, directly or indirectly, in any further criminal
prosecutions or in determining the applicable guideline range
under the Federal Sentencing Guidelines.

    9.   **LIMITATIONS ON IMMUNITY.**  Nothing contained in this
agreement restricts the use of information obtained by the United
States from an independent, legitimate source, separate and apart
from any information and testimony provided pursuant to this
agreement, in determining the applicable guideline range or in
prosecuting Ms. Drumm for any violations of federal or state laws.
The United States reserves the right to prosecute Ms. Drumm for
perjury or false statement if such a situation should occur
pursuant to this agreement.

    10.  **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.**
The United States and Ms. Drumm stipulate and agree that the facts
comprising the offense of conviction and some but not all of the
relevant conduct include the facts outlined in the "Stipulation of
Facts," a copy of which is attached hereto as "Plea Agreement
Exhibit B."

    Ms. Drumm agrees that if she withdraws from this agreement,
or this agreement is voided as a result of a breach of its terms
by her, and she is subsequently tried for her conduct alleged in
the information and other relevant conduct, as more specifically
described in the Stipulation of Facts, the United States may use
and introduce the Stipulation of Facts in the United States case-
in-chief, in cross-examination of Ms. Drumm or of any of her
witnesses, or in rebuttal of any testimony introduced by her or on
her behalf. Ms. Drumm knowingly and voluntarily waives, see United
States v. Mezzanatto, 513 U.S. 196 (1995), any right she has
pursuant to Fed. R. Evid. 410 that would prohibit such use of the

                                                            _____
                                                              Defendant's
                                                              Initials

Gerald M. Titus, Esq.
October 30, 2024                        Re: Deanna L. Drumm
Page 6

Stipulation of Facts.  If the Court does not accept the plea
agreement through no fault of the defendant, or the Court declares
the agreement void due to a breach of its terms by the United
States, the Stipulation of Facts cannot be used by the United
States.

    The United States and Ms. Drumm understand and acknowledge
that the Court is not bound by the Stipulation of Facts and that
if some or all of the Stipulation of Facts is not accepted by the
Court, the parties will not have the right to withdraw from the
plea agreement.

    11.  **AGREEMENT ON SENTENCING GUIDELINES**.  Based on the
foregoing Stipulation of Facts, the United States and Ms. Drumm
agree that the following provisions of the United States Sentencing
Guidelines apply to this case:

| Description | USSG Section | |
|---|---|---|
| Base Offense Level | 2B1.1(a)(2) | 6 |
| Loss greater than $250,000 | 2B1.1(b)(1)(G) | +12 |
| More than 10 victims & mass marketing | 2B1.1(b)(2)(A)(i) & (ii) | +2 |

    The United States and Ms. Drumm do not have any agreement on
the applicability of an enhancement for obstruction of justice
under § 3C1.1, for violation of a prior order under §
2B1.1(b)(9)(C),for extraterritoriality/sophisticated means under
§ 2B1.1(b)(10)(B)&(C), for abuse of trust under § 3B1.3 or any
agreement on any other provisions of the Guidelines. The parties
reserve the right to argue the applicability of these provisions
and any other provision of the Guidelines.

    The United States and Ms. Drumm acknowledge and understand
that the Court and the Probation Office are not bound by the
parties' calculation of the United States Sentencing Guidelines
set forth above and that the parties shall not have the right to
withdraw from the plea agreement due to a disagreement with the
Court's calculation of the appropriate guideline range.

                                        _____
                                        Defendant's
                                        Initials

Gerald M. Titus, Esq.
October 30, 2024                    Re: Deanna L. Drumm
Page 7

12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Ms. Drumm knowingly and voluntarily waives her right to seek appellate review of her conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. Ms. Drumm also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statutes of conviction 15 U.S.C. §§ 77e(c) and 77x and 18 U.S.C. § 2 are unconstitutional, and (2) Ms. Drumm's conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit B) does not fall within the scope of the statutes of conviction.

The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Ms. Drumm also knowingly and voluntarily waives the right to challenge her guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

13. **WAIVER OF FOIA AND PRIVACY RIGHT.** Ms. Drumm knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of

_____
Defendant's
Initials

Gerald M. Titus, Esq.
October 30, 2024                    Re: Deanna L. Drumm
Page 8

Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

14. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

    (a)   Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)   Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)   Respond to questions raised by the Court;

    (d)   Correct inaccuracies or inadequacies in the presentence report;

    (e)   Respond to statements made to the Court by or on behalf of Ms. Drumm;

    (f)   Advise the Court concerning the nature and extent of Ms. Drumm's cooperation; and

    (g)   Address the Court regarding the issue of Ms. Drumm's acceptance of responsibility.

15. **VOIDING OF AGREEMENT.** If either the United States or Ms. Drumm violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

16. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Ms. Drumm in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Ms. Drumm in any Court other than the United States District Court for the Southern District of West Virginia.



_____
Defendant's
Initials

Gerald M. Titus, Esq.
October 30, 2024                    Re: Deanna L. Drumm
Page 9

Acknowledged and agreed to on behalf of the United States:

                    WILLIAM S. THOMPSON
                    United States Attorney

        By:    _Holly J. Wilson_

                    HOLLY J. WILSON
                    Assistant United States Attorney

                                        _____
                                        Defendant's
                                        Initials

Gerald M. Titus, Esq.
October 30, 2024                    Re: Deanna L. Drumm
Page 10

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this ten-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____          ___11/4/24_____
Deanna L. Drumm                     Date Signed
Defendant

_____          ___11/4/24_____
Gerald M. Titus, Esq.               Date Signed
Counsel for Defendant


                                    _____
                                    Defendant's
                                    Initials

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**UNITED STATES OF AMERICA**

**v.**                               **CRIMINAL NO.** _____

**DEANNA L. DRUMM**

**I N F O R M A T I O N**

The United States Attorney Charges:

Beginning in or around February 2022 and continuing until at least August 2024, at or near South Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, defendant DEANNA L. DRUMM did aid and abet the willful use of any means and instruments of transportation and communication in interstate commerce to offer to sell, through the use and medium of any prospectus or otherwise, securities for which no registration statement was in effect and for which no exemption from registration was available, to wit, direct investments in real estate projects located on Bigley Avenue, Charleston, Kanawha County, West Virginia and promissory notes associated with Bear Lute.

**PLEA AGREEMENT EXHIBIT A**

All in violation of Title 15, United States Code, Sections 77(e)(c) and 77x and Title 18, United States Code, Section 2.

UNITED STATES OF AMERICA

WILLIAM S. THOMPSON
United States Attorney

By: _____
    HOLLY J. WILSON
    Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT A**
2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                           CRIMINAL NO. _____

DEANNA L. DRUMM

### STIPULATION OF FACTS

The United States and DEANNA L. DRUMM (hereinafter "defendant," "I," "my," "we," and "me") stipulate and agree that the facts comprising the offense of conviction and some, but not all, of the relevant conduct for that offense include the following:

#### 2020-2021: The Bear Entities, The Bakery Building, and Financial Strain

In or around 2019 or 2020, I moved to West Virginia. Not long thereafter, I became the Vice President of Operations for Bear Industries LLC ("Bear Industries"), a West Virginia company solely owned and operated by my son, T.M.

When I joined Bear Industries, I understood that it would serve as an umbrella entity for other related, existing businesses including, but not limited to, Prestige Worldwide Real Estate, a real estate company, and T&C Construction Services LLC ("T&C Construction"), a construction company, and other later-formed companies, including Stark Industries, a real estate holding company; McLovin Enterprises LLC, a restaurant and bar d/b/a The Sorority; and Homeless Savior Foundation, a 501(c)(3) non-profit to help homeless individuals (together with Bear Industries, the "Bear Entities").

When I joined Bear Industries in or around 2019 or 2020, I recall that the Bear Entities' funds and accounts were mostly segregated, with some commingling. Later, around the time Bear Lute was launched in May of 2022, the Bear Entities' funds and accounts became mostly, if not entirely, commingled, with the

exception of Homeless Savor Foundation, which never received any charitable contributions. The Bear Entities' combined monthly expenses frequently exceeded the companies' collective monthly income such that it was necessary to prioritize which expenses to pay, including past due expenses. T.M. told me which expenses to pay first.

In October 2020, Bear Industries entered into a "Land Contract" for a large industrial building at 1007 Bigley Avenue, Charleston, Kanawha County, West Virginia (the "Bakery Building") and an empty lot at 1015 Bigley Avenue, Charleston, Kanawha County, West Virginia. The agreement provided that title would not transfer until the entire purchase price of $600,000 was paid. Bear Industries was required to pay $5,226.64 per month as a payment. Almost immediately after the agreement was executed, the Bakery Building became a financial problem for Bear Industries. The roof needed significant repairs, which Bear Industries could not afford. Efforts to secure alternative sources of funding for the Bakery Building in 2021 were unsuccessful.

In or around June of 2021, I understood that T.M. would be living abroad for an extended period. As a result, in my capacity as the Vice President of Operations of Bear Industries, I became responsible for most of the day-to-day operational tasks of the Bear Entities in West Virginia, with input and direction from T.M. My regular duties and responsibilities included, but were not limited to, tracking income, expenses, and payables via spreadsheets; paying bills; interfacing with creditors; emailing real-time financial updates to T.M.; managing rental properties; processing investor payments; and communicating with third parties on behalf of the Bear Entities. I also edited text and designed graphics for prospectuses and marketing materials to be distributed to potential investors. I also sent money from the United States to T.M. and others abroad, as directed by T.M. I had access to all bank accounts for the Bear Entities including an account ending in 5311 in the name of Bear Industries, an account ending in 5162 in the name of Prestige Worldwide Real Estate, and an account ending in 5154 in the name of T&C Construction. I also had access to a Paypal account that was linked to the T&C Construction bank account ending in 5154.

In October 2021, while the Bear Entities were struggling financially, T.M. sent me a concept for an investment program that Bear Industries would offer to the public directly. That conceptualized investment program, which was at the time unnamed but later dubbed "Bear Lute," contemplated obtaining investments from average people, depositing the funds into a 6% interest

**PLEA AGREEMENT EXHIBIT A**

2

bearing account, moving the investments from the account to real estate projects, sharing in the profits with investors, and securing the investments with real estate. The concept explicitly contemplated that investors would be able to withdraw their funds within sixty days of making a request.

Around this same time, the Bear Entities' financial status continued to worsen. This was caused, in part, by the condition of the Bakery Building. For example, on October 18, 2021, the Charleston Fire Department shut down the Bakery Building for life safety issues.

<u>2022-2024: Bear Lute and Direct Investment Projects</u>

In February 2022, Bear Industries started another new venture: acquiring and developing property adjacent to the Bakery Building along Bigley Avenue in Charleston, West Virginia. I was aware of this venture and negotiated with the owner of those properties around this timeframe.

Specifically, the venture was comprised of two projects. First, the residences located at 915 and 917 Bigley Avenue Charleston, Kanawha County, West Virginia would be developed into modern duplexes. Second, a dry-storage lot would be constructed and rented out at 1019 Bigley Avenue and superficial upgrades would be made to the residence at 1021 Bigley Avenue.

I helped prepare the promotional materials for these projects. In particular, I prepared a schematic of the dry-storage lot and edited the dry-storage lot prospectus. I also edited the prospectuses for the duplex projects.

Efforts to obtain traditional financing for these projects in early 2022 were unsuccessful. As a result, the projects were advertised to individual investors via email using the internet beginning in or around May of 2022 as "direct investments."

Separately, on May 26, 2022, T.M. formally launched "Bear Lute," the investment program conceptualized in October 2021.

On May 31, 2022, I facilitated a "Land Contract" for 915 and 917 Bigley Avenue, Charleston, Kanawha County, West Virginia, by presenting that Land Contract to the owner of the property for his signature. I did not draft the Land Contract. T&C Construction was listed as the "purchaser." The agreement provided that title would not transfer until the entire purchase price of $80,000 was paid. T&C Construction was required to pay $1,000 per month as a

**PLEA AGREEMENT EXHIBIT A**
3

payment. I signed the agreement for T.M., pursuant to the Power of Attorney he had granted to me.

Between May and June of 2022, the Bear Entities' financial situation worsened significantly. Mortgages and car payments fell into delinquency, the water was shut off at the Bakery Building for non-payment, and financial institutions denied loans to the Bear Entities.

Investors began investing in both "Bear Lute" and the "direct investment" projects in or around June 2022.

On July 26, 2022, I attended a breakfast meeting with the owner of the properties on Bigley Avenue. During the meeting, we discussed the poor condition of the Bakery Building, and we discussed another potential "Land Contract" for the properties at 1019 and 1021 Bigley Avenue.

The next day, at T.M.'s direction, I utilized my Power of Attorney for T.M. to sign another "Land Contract" for 1019 and 1021 Bigley Avenue, Charleston, Kanawha County, West Virginia. The agreement provided that title would not transfer to T&C Construction until the entire purchase price of $60,000 was paid. T&C Construction LLC was required to pay $539 per month as a payment.

*Direct Investments*

Investors for the dry-storage lot project were told that a secure lot would be constructed at "1017" and 1019 Bigley Avenue and that minor upgrades would be performed on the home at 1021 Bigley Avenue. Once the construction was complete, investors would receive their initial investment back, plus a percentage of a cash out refinance. Thereafter, the lot spaces and the house would be rented and the investors and Bear Industries would share in the rental income. Investors were led to believe that this investment was safe.

Investors for the duplex project were told that the homes at 915 and 917 Bigley Avenue would be developed into modern duplexes, refinanced, and rented out. Like the dry-storage lot project, once the remodels were complete, investors would receive their initial investment back, plus a percentage of a cash out refinance. Thereafter, the duplexes would be rented and the investors and Bear Industries would share in the rental income. Investors were led to believe that this investment was safe.

**PLEA AGREEMENT EXHIBIT A**

Investors signed two documents via Docusign to invest in the direct investment projects: an "Investor Agreement" and a "Partnership Agreement." The Investor Agreements were promissory notes, under which Bear Industries promised to repay the investor within a specific time period and promised to use the investment funds for the projects only. Bear Industries gave the investor a security interest in the project property—although I now understand that neither Bear Industries nor any of the Bear Entities ever possessed legal title to any of these project properties, and therefore could not have granted any investor a valid security interest in any of the properties. The Partnership Agreements entitled the investors to a portion of future rental income. I kept track of all of the Investor Agreements and Partnership Agreements.

The table below summarizes the direct investments obtained by Bear Industries.

| Victim | Date(s) (approx.) | Project | Total Amount of Investment |
|--------|-------------------|---------|----------------------------|
| J.C. | 7/19/2022– 7/20/2022 | Dry-Storage Lot | $40,000 |
| J.C. | 7/14/2022 | 915 Bigley Avenue Duplex | $20,000 |
| C.T. | 7/5/2022 | Dry-Storage Lot | $20,000 |
| B.W. | 9/8/2022 | 917 Bigley Avenue Duplex | $10,000 |
| A.G. | 10/6/2022 | 917 Bigley Avenue Duplex | $5,000 |
| **TOTAL** | | | **$95,000** |

The $95,000 Bear Industries received for the direct investments was deposited into one or more of the Bear Entities' accounts and comingled with the funds of other Bear Entities. From these comingled accounts, and at T.M.'s direction, I paid the Bear Entities' financial obligations, and transferred funds to myself and T.M. This included a $20,000 transfer on July 20, 2022, from Bear Industries' account ending in 5311 to T&C Construction's account ending in 5154. None of the money was applied toward completing the dry-storage lot project or the duplex project. Indeed, the projects were never even started. The lot at 1019 Bigley Avenue remains vegetated. Further, 1017 Bigley Avenue is not a valid address. I knew that I was not applying the money as was promised to investors.

In the Spring of 2023, the Bear Entities defaulted on the monthly payments for Bigley Avenue properties (915, 917, 1007, 1015, 1019, and 1021) and lost possession of them entirely.

**PLEA AGREEMENT EXHIBIT A**
5

*Bear Lute*

As stated, Bear Industries launched Bear Lute in May of 2022. Bear Lute was a pooled real estate investment vehicle, promoted and run primarily through bearlute.com. Investors were directed by T.M. to the website to learn about the program and to sign up. Until September 2024, bearlute.com remained active.

Between May 2022 and September 2024, bearlute.com contained representations that were designed to make Bear Industries seem like a large and successful real estate development company. My involvement with the content of bearlute.com was limited to proofreading some text for grammar but not substance. T.M. controlled and directed what was posted on the website.

Between May 2022 and September 2024, bearlute.com also represented that the investment program functioned in five steps. First, investors would sign up to make either a reoccurring or one-time deposit in Bear Lute. Second, all investor funds would be pooled into one conglomerate account. Third, investor funds would be deployed for various real estate projects. Fourth, once the projects were complete, the property would be refinanced and those funds would be added back to the conglomerate account. Fifth, investors would be given quarterly distributions.

Between May 2022 and September 2024, bearlute.com told investors that they could expect consistent, standard returns with a minimum return on investment of 6%, that they could withdraw their investment within sixty days of a withdraw request, and that their investment was "safe and secure" because it was backed with real property.

To sign up for Bear Lute, an investor would sign an "Investor Agreement." The Investor Agreement provided that funds would be returned within 60 days of a request for withdraw, that the investments were to be used exclusively for real estate transactions, and that the investment was secured by an interest in the Bakery Building and personally guaranteed by T.M.

After an individual invested in Bear Lute, T.M. gave the investor access to an online dashboard where the investor could track his or her initial investment, make additional deposits, make withdraw requests, and watch his or her investment "grow" on a graph. To the extent that the graphs available on any investors' online dashboards reflected a return on investments, no such return existed.

**PLEA AGREEMENT EXHIBIT A**

Between 2022 and 2024, I used Paypal to process investors' Bear Lute deposits. I also kept track of investors in excel spreadsheets. Bear Industries also used the Stripe payment processor for some of this time period.

All of the representations about Bear Lute mentioned above were false.

1. Bear Industries was not a large and successful real estate development company. The Bear Entities were all financially struggling, and the real estate portfolio was much smaller than had been represented to investors. Bear Industries did not have any employees outside of T.M., myself, and possibly F.C., who is T.M.'s wife. To my knowledge, Bear Industries never employed anyone by the name of Nancy Smith. I do not know a person by the name of Nancy Smith.

2. Bear Lute investments were not pooled into a conglomerate, interest bearing account and deployed on real estate projects in the manner advertised to investors. Rather, I used the money as it came in to pay unrelated expenses, debts, and obligations.  T.M. directed me as to which obligations to pay, and in what order.

3. Investor funds were not returned within sixty days of a withdraw request. Only one investor, J.I., received a fraction of his investment back from Bear Lute.

4. I now understand that the investments were not safe and secure because Bear Industries never possessed legal title to the Bakery Building, and therefore, investors could never have been granted a valid security interest therein. Additionally, Bear Industries continued to pledge the Bakery Building as security in Investor Agreements even after the Bear Entities had lost possession of that property.

5. Investors were never earning any interest on their investment. There was no conglomerate account. There was no 6% return, or any return whatsoever. There were no property refinances that would have generated any return.

In September 2023, the West Virginia Securities Commission issued Bear Industries a cease-and-desist letter ordering Bear Industries to stop the unregistered sale and offering of securities through Bear Lute. I received this letter. I was on notice at this time that the continued solicitation and acceptance of investments via Bear Lute after this time would violate the West Virginia

**PLEA AGREEMENT EXHIBIT A**
7

Securities Commission's letter. Nevertheless, I continued to help operate Bear Lute by processing payments from investors. Bear Industries did not respond to the letter.

In November 2023, the West Virginia Securities Commission issued a final cease-and-desist order, again ordering Bear Industries to stop the unregistered sale and offering of securities through Bear Lute. I received this order, and I called the West Virginia Securities Commission to coordinate sending a response and to advise that T.M. was working on a response. Bear Industries responded to the order after it became final. Again, I continued to help operate Bear Lute in violation of the order, even though I was on notice that doing so would violate the order. At the time, T.M. told me not to be concerned with the order because Bear Industries was not offering securities because the company "was not publicly traded." I accepted his explanation, neglected to undertake my own independent research regarding this issue, and I continued to help Bear Lute operate in violation of the order.

More than 170 investors invested in Bear Lute, most of whom were located outside of the state of West Virginia. Bear Industries obtained more than $335,000 from Bear Lute investors between May of 2022 and September 2024.

### August 2024: Post-Arrest Conduct

Law enforcement arrested T.M. on August 9, 2024, for alleged conduct related to the direct investments and Bear Lute. In the days following, I drove evidence that is material to his prosecution, including but not limited to T.M.'s backpack and laptop computer, with F.C., to my parents' home in Michigan to conceal it from law enforcement. I placed the backpack in an upstairs closet in my parents' home. I hid the laptop in my parents' basement. My intent was to keep law enforcement from getting these items. F.C. was aware that these items were left in Michigan. After entering into a Proffer Agreement with the United States, and entirely of my own volition and without having been asked to do so, I arranged for the laptop and backpack to be transported to West Virginia, whereupon I voluntarily surrendered those items to the United States.  Around that time, I learned that the contents of backpack included two phones and a tablet.

## Offense Conduct & Total Loss

I know that my actions in furtherance of the direct investments and Bear Lute, as detailed above, constitute aiding and abetting the offering of unregistered securities in violation of 15 U.S.C. §§ 77e(c) and 77x and 18 U.S.C. § 2. Specifically:

1. The direct investments and Bear Lute investments were "securities" as that term is defined in 15 U.S.C. § 77b(a)(1);

2. No registration statement was in effect for the Bear Lute investments or the direct investments, and neither were exempted from registration;

3. The securities were offered using a means or instrument of transportation or communication in interstate commerce, namely, the internet; and

4. I took affirmative acts in furtherance of these offerings, including but not limited to processing payments, assisting with the prospectuses, and maintaining investor lists, with the intent of facilitating the offerings.

I caused a loss to investors in a total amount of at least $430,000 and no more than $550,000. Of this total amount, $95,000 of the loss is associated with direct investments, consistent with the table included above. At least $335,000 of the loss is associated with Bear Lute.

\* \* \*

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning her involvement and the involvement of others in the charges set forth in the Information.

Stipulated and agreed to:

_____          11/4/24
DEANNA L. DRUMM                            Date
Defendant

_____          11/4/24
GERALD TITUS                               Date
Counsel for Defendant

_____          11/4/24
HOLLY J. WILSON                            Date
Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT A**
10