# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 2:24-CR-00179

DEANNA L. DRUMM

### DEFENDANT'S SENTENCING MEMORANDUM

Comes now the defendant, Deanna L. Drumm, by counsel, and hereby submits her sentencing memorandum. Ms. Drumm argues that a sentence of non-incarceration is sufficient to satisfy the purposes of sentencing and asks the Court to vary downward to impose a sentence of probation with a special condition of home confinement.

I. **Section 3553(a)(1): The nature and circumstances of the offense and the history and characteristics of the Defendant.**

   A. **Nature and Circumstances of the Offense**

Ms. Drumm pled guilty to a single-count Information charging her aiding and abetting the sale of unregistered securities, in violation of 15 U.S.C. §§ 77(e)(c) and (x) and 18 U.S.C.§ 2. The securities at issue, which were sold by her son, Theodore Miller, consisted of direct investments in real estate projects for Bear Industries and promissory notes associated with investments Mr. Miller solicited via the "Bear Lute" website.

With respect to the direct investments in Bear Industries, Ms. Drumm prepared a graphic of the dry storage lot project, and proofread the prospectuses for the dry storage lot and duplex projects. She performed the clerical task of maintaining copies of the signed investor agreements and promissory notes for those investments. She did not solicit those investments, and does not believe that she ever communicated with any direct investor. She did not prepare the investor agreements or promissory notes which Mr. Miller entered into

with investors. Rather, Mr. Miller notified Ms. Drumm whenever a direct investor wired funds to one or more of Mr. Miller's companies. At Mr. Miller's direction, Ms. Drumm utilized those funds to pay the most urgent business expenses of Mr. Miller's various companies and to distribute some funds to Mr. Miller and herself. The funds Ms. Drumm to distributed to herself were to cover her living expenses and reimburse herself for business expenses. She did not draw a salary or derive a profit from her work. Although she knew that the spending of those funds was contrary to Mr. Miller's promises to investors, she was not focused on that issue. She was tasked with her son's emergent daily demands, within a chaotic business environment. She wishes that she had stopped to reflect upon her doubts, instead of trying to triage an impossible situation.

With respect to the Bear Lute investments, Ms. Drumm's role was to process credit card payments authorized by investors via [www.bearlute.com](www.bearlute.com). Ms. Drumm proofread some text of that website prior to its launch, but did not create content for the website or maintain it. She did not personally solicit or communicate with any Bear Lute investor. Rather, Mr. Miller would provide investors' credit card information to Ms. Drumm, with instructions to process a specific amount, either as a one-time or recurring charge via PayPal. Ms. Drumm processed those payments and input the data into a spreadsheet. For the recurring monthly investments, she would continue to charge the investor's credit card unless Mr. Miller said to stop. Later, Mr. Miller enabled the website to automatically process investor payments via Stripe. Ms. Drumm continued to input some of those investments into the spreadsheet, but did not process the automatic payments.

After Bear Industries received a cease-and-desist letter and order from the West Virginia Securities Commission, Ms. Drumm continued to process Bear Lute investor

payments via PayPal. The WVSEC's actions caused enough suspicion that she approached her son about the matter. She regrets accepting his superficial (and in hindsight incorrect) explanation that the company was not selling securities because it was not publicly traded. She realizing should have exercised greater personal responsibility to investigate the issue for herself instead of relying upon Mr. Miller's explanation.

Ms. Drumm acknowledges and regrets her conduct, and has accepted responsibility for her actions. While Ms. Drumm is substantially less culpable than her son, she realizes that her actions, and inactions, helped facilitate the activities which led to his prison sentence and her criminal conviction.

B. **History and Characteristics of Defendant**

Ms. Drumm is age 61 with no prior criminal history. Until she went to work for her son, she had maintained gainful, legitimate employment for her entire adult life, including significant service as a government employee and contractor. When she agreed to move to West Virginia to work for her son, his ventures and intentions appeared legitimate, and she did not anticipate the complete mess her life would become.

Ms. Drumm's conduct has greatly strained her family relationships, and caused her significant stress as she has attempted to navigate the difficult circumstances of her son being indicted while she and her daughter-in-law, with whom she resided, were also under federal investigation. Ms. Drumm's conduct has forced her to make some difficult choices during this case to do what she thought was right, even if those choices could have had negative consequences for others, while also trying to emotionally support her children. The negative publicity surrounding her and her son's cases has caused her considerable embarrassment.

She worries that the stress of these events could have impacted her parents' health, as well as her own health.

Ms. Drumm lives with her 80 year old mother in Michigan, where she serves a vital role her mother's daily care and in helping her mother grieve the recent loss of her husband, Ms. Drumm's father. Ms. Drumm is deeply appreciative that the Court allowed her to fulfill her father's wish to not be placed into a nursing home before he passed away.

Ms. Drumm will forever live with the consequences of her actions, but would be grateful if the Court could fashion a sentence allowing her to continue to care for her mother.

II. **Section 3553(a)(2)(A-C): need for the sentence to reflect the seriousness of the offense; promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal conduct; and protect the public; and (3) the kinds of sentences available.**

A downward variance sentence of probation, with home confinement, which will substantially restrict Ms. Drumm's liberty, would satisfy the purposes of sentencing. Although the applicable USSG recommend a term of imprisonment, the PSR correctly notes that Ms. Drumm is eligible for not less than one nor more than five years of probation under 18 U.S.C. § 3561(c)(1). The Court may fashion a sentence of probation, including special conditions of home confinement. The Supreme Court has noted that offenders on probation are "subject to several standard conditions that substantially restrict their liberty." *Gall v. U.S.*, 522 U.S. 38, 48 (2007). Ms. Drumm's behavior while on bond shows that she is amenable to supervision.

Ms. Drumm's age predicts a low chance of recidivism. The United States Sentencing Commission has studied recidivism rates among offenders and found that "a federal offender's age and criminal history were closely correlated with their likelihood of reoffending." *See* Recidivism and Federal Sentencing Policy, Recidivism and Federal Offenders: A Comprehensive Overview. In a study of 25,431 federal offenders, the Sentencing Commission found that "for each age group

studied, the older the age group, the lower the re-arrest rate." *Id.* The Sentencing Commission, noted that "[s]tudies have repeatedly shown older offenders to have a lower risk of reoffending and the Commission's study confirmed this finding." *Id.*

Ms. Drumm's service as the primary caregiver for her elderly mother also weighs in favor of a downward variance. A sentence of probation or home confinement would allow Ms. Drumm to continue to provide essential caretaking to her mother.

### III. Section 3553(a)(7): the need to provide restitution to the victims.

Ms. Drumm will have a significant joint and several restitution obligation with her son. A sentence of probation will allow her to opportunity to earn income to make payments toward that obligation. She has started making amends by voluntarily selling her home so that the net proceeds may applied towards restitution.

Dated: October 1, 2025

        Respectfully submitted,

        **DEANNA L.DRUMM**

        By Counsel:

        **SPILMAN THOMAS & BATTLE, PLLC**

        */s/ Gerald M. Titus III*
        Gerald M. Titus III
        Spilman Thomas & Battle, PLLC
        P.O. Box 273
        Charleston, WV 25321-0273
        304.340.3800
        304.340.3801 fax
        gtitus@spilmanlaw.com